**Johnny STILES, Plaintiff,**

v.

**HOME CABLE CONCEPTS, INC., et al., Defendants.**

**AMERICAN GENERAL FINANCIAL CENTER, Plaintiff,**

v.

**Johnny STILES, Defendant.**

Civil Action Nos. 97–A–900–N, 97–A–931–N.

United States District Court, M.D. Alabama, Northern Division.

Feb. 23, 1998.

Philip H. Pitts, Selma, AL, for Plaintiffs.

Perryn G. Carroll, Birmingham, AL, David Elliot, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

This matter involves two consolidated cases. The two cases are *Johnny Stiles v. Home Cable Concepts, Inc., et al.*, No. 97–A–900–N, which was removed to this court from the circuit court of Lowndes County, Alabama;[1] and *American General Financial Center v. Johnny Stiles*, No. 97–A–931–N, which was originally filed in this court. American General ("AGFC") is a defendant in the first listed action, along with Home Cable. AGFC filed the second action in an attempt to force Mr. Stiles to arbitrate his claim against it. The court consolidated the two cases by order of July 10, 1997.

Presently before the court is Defendant AGFC's motion for summary judgment filed on January 5, 1998. Plaintiff has timely responded to the motion; and AGFC has served a further reply. For the reasons stated in this opinion, summary judgment in favor of AGFC is due to be GRANTED.[2]

1. Stiles has attempted to have his case remanded to the Circuit Court of Lowndes County. These attempts were based on the alleged non-diversity of Mr. Henry Russell, who was named as a Defendant in that case. Mr. Russell was never served, so the court denied the Plaintiff's original motion to remand, giving the Plaintiff until September 8, 1997 to perfect service on Mr. Russell.

Later, the Plaintiff filed a Renewed Motion to Remand, representing to the court that Mr. Russell had been served, and that, therefore, the matter was ripe for remand. It turns out that the service was made on the wrong person, however. The court quashed that service by order on October 28, 1997. The court also granted a motion to dismiss Mr. Russell by order on that day. Those orders effectively mooted Plaintiffs Renewed Motion to Remand.

Plaintiffs have since filed a motion to reconsider / motion to extend deadlines. Plaintiff is asking for additional time to serve Mr. Russell, on the grounds that Home Cable has not answered an interrogatory which requested Mr. Russell's last known address. Home Cable objected to this interrogatory because of the difficulty of locating this address. Home Cable is no longer in the business and would have to search for the address within an alleged million, unorganized documents stored in a warehouse. Plaintiff never filed a motion to compel Home Cable to answer this interrogatory. This last attempt at remand, in the form of a motion to reconsider / extend the deadline to serve Mr. Russell is due to be DENIED.

2. AGFC also filed a motion to stay proceedings in this case until the court had decided the issue of arbitration. AGFC never followed that motion with a brief or evidence, to place the matter before the court for consideration. Given the resolution of this matter on summary judgment, the motion to stay is DENIED AS MOOT.

## I. *SUMMARY JUDGMENT STANDARD*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(e). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates,* 887 F.2d 1493 (11th Cir.1989).

## II. *FACTS*

In deciding a motion for summary judgment, the evidence presented by the nonmovant must be believed and all justifiable inferences must be drawn in his favor. *Anderson,* 477 U.S. at 255. The facts, as viewed in that light, are as follows.

This is a satellite case. Plaintiff Johnny Stiles purchased a satellite television receiving system on or about January 31, 1994. To finance this purchase, Mr. Stiles applied for a revolving charge account with AGFC. *See Credit Application, 3–31–94.* On the application, there are four caveats printed in bold directly above the signature line. One of these states that

BY SIGNING BELOW YOU: ...

**(3) Agree that if this application is accepted and credit is extended by American General Financial Center, you will be bound by the terms of the Cardholder Agreement attached hereto, a copy of which has been provided to you.**

*Id.* Mr. Stiles signed and dated the application below this statement, thereby binding himself to the cardholder agreement. *Id.*

The Cardholder Agreement establishes a number of duties for AGFC, as well as the credit card holder. Matters discussed include the Annual Percentage Rate (18.96%), permissible fees, the security interest taken in the equipment sold, and payment provisions. *Cardholder Agreement.* Each subject is treated independently, in a numbered paragraph, with a bold title. *Id.* Most important for this case is paragraph 14, which states in full:

14. **CHANGES TO THIS AGREEMENT:** We may change the terms of this Agreement from time to time and shall give you notice of the changes as required by law. Such changes may include, without limitation, changes in the monthly periodic rate (and the corresponding Annual Percentage rate) and changes in the method of computing Finance Charges. If we do so, such changes will apply to both the outstanding balance in your Account and future transactions.

*Id.* The copy of the agreement received by Mr. Stiles states in a paragraph, set off in a separate box, and written in a larger font, that the agreement was current as of July 1993, and gives a toll-free phone number and address at which to contact AGFC about changes in the agreement. *Id.* The Agreement also provides, as did the credit application, that signing the credit application binds the applicant to the terms of the cardholder agreement. *Id. at para. 28 ("EXECUTION OF AGREEMENT").* In addition, paragraph 18 provides that the agreement will be governed by Utah law unless superseded by federal law:

18. **APPLICABLE LAW:** This Agreement shall be governed by and interpreted entirely in accordance with the laws of the State of Utah, or, to the extent such laws

are superseded by federal law, federal law shall apply. AGFC will process your application, make the decision to approve and open your Account and advance credit for you from our Midvale, Utah office. You agree that all terms, charges, fees and conditions are material to the determination of the Finance Charge, Annual Percentage Rate, and Monthly Periodic Rate. *Id.*

On January 1, 1997, AGFC exercised its right to change the cardholder agreement with Mr. Stiles. AGFC mailed to him a document entitled "**IMPORTANT NOTICE OF CHANGE OF TERMS TO YOUR AMERICAN GENERAL FINANCIAL CENTER CREDIT CARD CARDHOLDER AGREEMENT.**" This notice states that a two part change will take place to the cardholder's agreement, as of the end of the present billing cycle. First, the APR will be reduced by two points, to 16.96%. Second, a new provision is added to the cardholder agreement. That new provision is printed on the back and front of the notice. It states in part:

**ARBITRATION.** You acknowledge the transactions evidenced by this agreement involve interstate commerce. You and AGFC agree that any and all claims, disputes or controversies of every kind and nature (past, present and future) between You and AGFC shall be resolved by arbitration, including without limitation those based on contract, tort or statute. You and AGFC also agree that all issues and disputes as to the arbitrability of claims must also be resolved by the arbitrator. You and AGFC further agree that the arbitrator shall have no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties.
**YOU AND AGFC UNDERSTAND THAT ABSENT THIS AGREEMENT EACH WOULD HAVE THE RIGHT TO LITIGATE SUCH DISPUTES THROUGH A COURT, AND YOU AND AGFC VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT YOU OR AGFC MAY HAVE TO A JURY TRIAL OR JUDGE TRIAL OF SUCH DISPUTES.**

The notice goes on to state that the arbitration shall be conducted at a location selected by the cardholder, and that it will be conducted under rules of the American Arbitration Association. In addition, costs are split (except that AGFC agrees to pay the filing fee upon request); the Federal Rules of Evidence are said to apply; court review is provided as in 9 U.S.C. § 10; and punitive damages are allowed up to 5 times economic loss. *Id.* The clause further provides that it runs to the benefit of successors of AGFC, and that the cardholder

agree[s] to submit to arbitration all claims or disputes [cardholder] may have against all other persons or entities involved with the transactions subject to this clause and all persons or entities who may be jointly or severally liable to you regarding matters or events relating to the transactions and documentation subject to this clause.

Finally, the notice goes on to provide that any invalid provisions are severable.

AGFC elected not just to force its cardholders to accept arbitration without any choice, however. The final provision of the notice reads in bold print:

**You may elect to reject these changes in terms by completing the attached postage paid postcard and returning it to American General Financial Center postmarked no later than March 1, 1997. If you reject these changes your Annual Percentage Rate(s) will be reinstated to the current rate(s) disclosed on your enclosed billing statement, and there will be no arbitration agreement in effect.**

Attached below this statement was a self-addressed, postage paid card which requests the cardholder's name, address, telephone, signature, and account number. The text of the card states

Rejection of Change in Terms.

I hereby reject the change in terms to my American General Financial Center credit card account. I understand and agree that my Annual Percentage Rate(s) will be reinstated to the rate(s) disclosed on my January, 1997 billing statement and that there will be no arbitration agreement between us.

After the signature and information requests was another line stating, "**To Reject the Change in Terms, this postcard must be postmarked by March 1, 1997.**"

Mr. Stiles has not disputed any of the facts proffered by AGFC in this case. In addition, he has not questioned the authenticity of any of the documents presented to this court by AGFC. Mr. Stiles, in fact, acknowledges receipt of this change, *Stiles Affid; see also A. Boston Affid.,*[3] and acknowledges that he did not send in the card to reject the provisions, *Stiles Affid; C. Dossett Affid.* Mr. Stiles' only evidentiary response is a short affidavit stating that

> this agreement was not explained to me and I did not understand the rights I was forfeiting by not sending this amended agreement back to American General Financial Center rejecting the arbitration provisions. The first time I understood that this amended agreement provided for mandatory arbitration, was when my attorney brought this to my attention. This amended agreement was not part of the original contract entered into with American General Financial Center and it was not explained to me to allow me to understand the provisions therein. When I received this amended agreement, I did not know what it meant, therefore I did not return it to American General Financial Center.

*Stiles Affid.*

It is undisputed that Stiles did not file his lawsuit against AGFC until May 1997, well after the change in terms took effect. .

## III. *DISCUSSION*

Mr. Stiles has chosen not to dispute the essential facts as presented by AGFC; Mr. Stiles bought a satellite dish using credit from AGFC; part of the AGFC credit cardholder agreement provides that the agreement is subject to change; AGFC instituted a change, providing for arbitration, which automatically became part of Stiles' agreement because he did not reject it. The matters, therefore, are for resolution as a matter of law.

Stiles' brief in this matter is only four pages long, but nonetheless raises a number of objections. The objections are, for the most part, unsupported and without merit. The primary controversy, as he sees it, is that "First and foremost, Johnny Stiles has not signed any written agreement concerning arbitration, and furthermore, the defendant has not agreed to any alternative resolution procedure." *Stiles Memo. in Opp. at 1.* In addition, Stiles states that the matter does not involve interstate commerce; and that he did not understand the agreement, therefore, it is not enforceable.

Applicable federal law is clear. An arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Stiles has failed to show that such a reason exists. In addition, the court, on the undisputed facts before it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. In this event, the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* For the reasons discussed below, the court will order such arbitration.

### *Should the court even be hearing this dispute?*

■ Before the court gets to the question of the validity of the arbitration clause, it must first address the question of whether it should even be determining the validity of that clause. In other words, is the question of arbitrability in this case itself an arbitrable question? This issue sounds at first circular and unimportant. The Supreme Court has, however, recognized that this is a legitimate issue. Indeed, on closer glance, the importance of the issue is apparent. If a party to an arbitration contract is always able to go to court to dispute the validity of the arbitration clause, then the benefits of arbitration are, to at least some degree, lost. In other words, what good is arbitration, if you have first have to litigate whether you should arbitrate?[4]

---

3. Boston is employed by First Data Resources, Inc., Omaha, Nebraska, which mailed the notice to Mr. Stiles and other cardholders. She also authenticated a copy of the Notice.

4. This question is very important in a practical sense given that arbitration is final, and only reviewable by the courts in very limited circumstances. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 131

The Supreme Court case to discuss this issue, *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), went on to decide the validity of arbitration in that case, holding that it was inapplicable because the parties against whom arbitration was invoked were not parties to the arbitration agreement. The court noted in its analysis, however, that there is a valid question over "who should have the primary power to decide" if the parties "agreed to arbitrate the merits" of their dispute. *Id.* at 942 (emphasis deleted). The Court held that the question of who should decide whether a matter is arbitrable should be decided in the same manner as the question of what is arbitrable. *Id.* at 943. I.e., "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *Id.*

The Court went on to hold that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at 944. The Court recognized that this was different from the presumption applicable in a dispute over the scope of the arbitration clause. In those cases, the question of the scope of an arbitration clause is generally read in favor of broad applicability. *Id.* at 944–45. The Court held the difference in treatment to be necessary given that ambiguity with relation to the scope of a clause is a less compelling reason to go to court than ambiguity over the decision to arbitrate at all. *Id.* at 945. After all, debates over scope only arise in cases "when the parties have a contract that provides for arbitration of some issues." *Id.* at 945. In those instances, parties may be presumed to have given "at least some thought to the scope of arbitration." *Id.* Ambiguity, therefore, may be presumed to be a choice in that instance.

█ In any event, however, the Supreme Court decided that the facts before it did not warrant a decision that the plaintiffs had agreed to arbitrate arbitrability. There was no indication that the parties had "clearly agree[d] to submit the question of arbitrability to arbitration." *Id.* at 947. In the present matter, however, the agreement between

Johnny Stiles and AGFC does provide that Stiles "and AGFC also agree that all issues and disputes as to the arbitrability of claims must also be resolved by the arbitrator." *Important Notice of Change.* The court is, therefore, on somewhat troubling ground in deciding the issue of arbitrability in this case. The parties appear to have agreed to have an arbitrator decide that issue.

Nevertheless, it is possible that the agreement between Stiles and AGFC could be interpreted as only a statement regarding the resolution of the potential scope of the arbitration clause at issue. *See Consolidated Rail Corp. v. Metropolitan Trans. Authority,* 1996 WL 137587 at *5–*6 (S.D.N.Y.) (discussing three possible meanings of arbitrability: (1) whether parties had agreed to arbitrate at all, (2) scope of matters to be arbitrated, (3) duration of arbitration clause; analyzing *First Options* as a case dealing only with first category). In addition, Stiles challenge in this case can very well be interpreted to be a challenge to whether he "has agreed to arbitrate [his] claims *at all,* which is presumptively for the court, and not the arbitrator, to decide." *Rainbow Investments, Inc. v. Super 8 Motels, Inc.,* 973 F.Supp. 1387 (M.D.Ala.1997) (citing to statement in *Kaplan* that courts should not assume that question of arbitrability is for arbitrator unless clearly and unmistakably chosen); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("if the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the 'making' of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the statutory language [9 U.S.C. § 4] does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *WMX Technologies, Inc. v. Jackson,* 932 F.Supp. 1372, 1373 (M.D.Ala.1996) ("if the party resisting arbitration challenges the validity of the arbitration agreement, as opposed to the validity of the underlying contract, the court must proceed to adjudication of that issue").

L.Ed.2d 985 (1995), citing to 9 U.S.C. § 10 (providing that a court may overturn an arbitrator's decision only where procured by undue means,

fraud, or corruption; or where the arbitrator exceeded his powers).

Given that there is some dispute over the meaning of the arbitrability clause in the AGFC notice, and that there is some confusion over whether Stiles is claiming fraud in the inducement, the court will go on to discuss the validity of the arbitration clause in this case. The discussion does not change the ultimate decision, however. This matter is due to be dismissed for arbitration.

### Validity of Arbitration Clause.

■ Stiles' "[f]irst and foremost" objection is that he did not sign the arbitration clause at issue. It is, of course, a matter of general contract law that a party must agree to a contract in order to be bound by it. *See Old Republic Ins. Co. v. Lanier*, 644 So.2d 1258, 1260 (Ala.1994); *Roberson v. Money Tree of Ala., Inc.*, 954 F.Supp. 1519, 1528 (M.D.Ala.1997), citing Restatement of Contracts, 2d. § 17. This provision of general contract law applies even if the arbitration clause is subject to the Federal Arbitration Act. *See* 9 U.S.C. § 2 (arbitration clause not enforced where invalid "upon such grounds as exist at law or in equity for the revocation of any contract"). In addition, the FAA also requires that an arbitration clause be written to be enforceable. 9 U.S.C. § 2 (a "written provision"); *Continental Grain Co. v. Beasley*, 628 So.2d 319, 322 (Ala.1993).

■ While written agreement is required for arbitration, however, there is no requirement that every single provision of a contract, including the arbitration clause, must be signed in order to form part of the agreement. Indeed, it is axiomatic that "parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated." 17A Am.Jur.2d § 185. Stiles has not raised the argument that this particular provision must be signed because of some other requirement of Alabama or Utah law, or the FAA. Indeed, such an argument would be baseless. The FAA has no separate requirement of a signed arbitration clause. As noted by the Northern District of Alabama, "[i]t is well established that a written agreement to arbitrate need not be signed by the parties as a prerequisite to the enforcement of the agreement." *Middlebrooks v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1989 WL 80446, *2–*3 (N.D.Ala.1989).

■ Stiles has cited this court to three cases which allegedly stand for the proposition that he must sign an arbitration agreement for it to be enforceable. His reliance is misplaced, however. The first that he cites, *Old Republic Ins. Co.*, 644 So.2d at 1260, only stands for the proposition that a party must agree to a contract to be bound by it. The second, *Continental Grain Co.*, 628 So.2d at 322, merely notes that the FAA requires arbitration clauses to be written. Finally, the third, *Ex parte Jones*, 686 So.2d 1166 (Ala.1996), only stands for the proposition that someone who is "not a party to the contract containing the arbitration agreement" may not compel arbitration. None states the proposition that the arbitration clause itself must be signed. Indeed, these cases could not state that proposition. Alabama law is not permitted by the FAA to treat arbitration clauses any differently than other contracts. *See Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996) ("Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions") (emphasis in original); *Allied–Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (FAA makes unlawful any state policy that "would place arbitration clauses on an unequal 'footing' "). Because Alabama law only requires the contract to be signed (and only certain contracts at that), and does not require every single provision of every contract to be signed, it could not require the arbitration clause at issue here to be signed. *Doctor's Assoc.*, 517 U.S. at 682–84, 116 S.Ct. at 1654 (holding that Montana law cannot require special notice provisions in arbitration contracts).

Stiles assented to the contract as a whole in this case. That fact is uncontested. In addition, it is uncontested that the contract to which Stiles assented may be changed by AGFC. A contract incorporating such a clause is valid under the laws of both Utah and Alabama. *See* discussion below. Stiles has, therefore, assented to an arbitration clause, even absent his signature. *Cf. Clayton v. Woodmen of the World Life Ins. Society*, 981 F.Supp. 1447 (M.D.Ala.1997) (compelling arbitration where arbitration clause

was included in constitution of fraternal benefit society, which was incorporated by reference into insurance contract); *Hill v. Gateway 2000, Inc.,* 105 F.3d 1147 (7th Cir.), cert. den., —— U.S. ——, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997) (holding that arbitration clause, which was included with product mailed to customer and with proviso that customer could return product within 30 days, was binding on customer who did not return computer). The provision is not invalid because not signed.

### Stiles' Alleged Misunderstanding of the Clause.

 Stiles also argues that the arbitration clause must be invalid because he did not understand it. The court is somewhat unsure how to take this objection. It is a principle of basic contract law that unilateral mistakes by a party do not invalidate the contract. *See* 17A Am.Jur.2d *Contracts* § 218 ("a party to a contract cannot avoid it on the ground that he made a mistake where there has been no misrepresentation, there is no ambiguity in the terms of the contract, and the other party has no notice of such mistake and acts in perfect good faith"). Stiles has not shown that there is some great reason, indeed he has not shown that there is any reason, to depart from this general rule. The court is not going to imagine those reasons for him. This argument is without merit.

### Interstate Commerce.

 Stiles also objects to the arbitration agreement because the transactions at issue do not involve interstate commerce. The Federal Arbitration Act makes a written arbitration provision enforceable if it is included in a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Commerce is defined as "commerce among the several states," in effect, interstate commerce. 9 U.S.C. § 1. The Supreme Court recently determined this phrase to be a full exercise by Congress of its power to regulate interstate commerce; " 'evidencing a transaction' mean[s] only that the transaction ... turn[s] out, in fact, to have involved interstate commerce." *Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *see, e.g., Clayton v. Woodmen of the World Life Ins. Society,* 981

F.Supp. 1447 (M.D.Ala.1997), *Roberson,* 954 F.Supp. at 1523.

Uncontested statements of Pat Walsh, vice president of credit of AGFC, show that the transactions in this case involve interstate commerce. *See P. Walsh Affid. (discussing connections to Utah, Nebraska, Indiana, Illinois, and Tennessee).* In addition, a wealth of other evidence, all uncontested, shows the connection of these transactions to a number of states. *See A. Boston Affid. (discussing activities of First Data Resources, Inc., a Nebraska corporation servicing AGFC); Cardholder Agreement para. 18 (choice of Utah law), para. 26 (address of AGFC's Indiana service center), and "Summary of Insurance Coverages" (discussing sales in number of states); see also Notice of Change ("You acknowledge the transactions evidenced by this agreement involve interstate commerce").* Plaintiff's unsupported statement that interstate commerce is not present is simply without any merit whatsoever.

### Unconscionability.

 Although Plaintiff never says so, he may be trying to invoke that portion of the FAA which states that arbitration clauses are not required to be enforced where they are invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has interpreted this statement to "give[ ] States [ ] method[s] for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision," under both contract principles and equity. *Allied–Bruce,* 513 U.S. at 281; *see also Roberson,* 954 F.Supp. at 1524. In other words, state law on unconscionability is applicable to arbitration contracts.

In *Roberson,* Judge Thompson undertook a thorough discussion of unconscionability, in the context of an arbitration clause. He concluded that the concept was both hazy, and largely undefined. *Id.* at 1524–25. Nevertheless, he stated that Alabama law "at a minimum" does not allow a party to "rely on an abstract principle or theory of unfairness of a bargain to make a case for unconscionability; it must still be gauged by the actual circumstances of the case, and not in the abstract." *Id.* In arriving at this conclusion,

Judge Thompson discusses *Layne v. Garner*, 612 So.2d 404, 408 (Ala.1992), which defines an unconscionable contract as " 'such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Roberson*, 954 F.Supp. at 1525. In addition, he also cites to *Taylor v. Leedy & Co.*, 412 So.2d 763, 765–66 (Ala.1982) which discussed as factors bearing on unconscionability the relative bargaining power of the parties, the availability of choice, and the reasonableness of the provision at issue. *Roberson*, 954 F.Supp. at 1525. Judge Thompson concluded that the parties in his case could not make a case for unconscionability largely because they had not "identified what it is that they have lost in their contract," *id.* at 1525, nor had they "shown that the fact they must pursue arbitration even discriminates (unfairly or fairly) against them," *id.* at 1525.

 Just as in the *Roberson* case, Johnny Stiles has not shown what it is that is so objectionable about the arbitration which he is required to undertake. Arbitration clauses are not per see unconscionable. *Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 604 So.2d 332, 340 (Ala.1991). Stiles was given a clear choice in this case; he could take the arbitration provision or leave it. Even if AGFC had not given Stiles this choice, that fact might not even be objectionable. As noted by Judge Thompson, contracts of adhesion are not per se unconscionable, and have a number of social benefits. *Roberson*, 954 F.Supp. at 1526 n. 10. In addition, the bargain which Stiles freely entered into with AGFC gave them the power to undertake this change even without his consent. Stiles has not made a case for unconscionability.

### *Statutory Endorsement.*

Far from being unconscionable, the procedure to which Stiles objects is specifically sanctioned by the law which applies to this contract. The procedure used is permissible under Utah law. As provided in Utah Code § 70C–4–102 (1953):

> a creditor may change any written term of an open-end credit contract at any time while the agreement is in effect and apply the new term to the unpaid balance in the account, by giving not less than 15 days advance written notice of the change to all other parties who may be affected, but only if the contract expressly provides that the creditor may change terms of the agreement from time to time . . .

Stiles has not contended that AGFC failed to comply with this statutory procedure. In addition, Stiles has not shown that this provision would somehow be inapplicable, and that Alabama law would therefore apply. In any event, Alabama law would apparently permit the change as well. *See* Ala.Code § 5–20–5.[5]

## IV. CONCLUSION

In sum, Johnny Stiles has shown this court no reason that it should not enforce his agreement, which now includes arbitration, with AGFC. He signed a contract which allows changes in terms; state law allows such changes; and the arbitration clause is, in no way, improper.

 AGFC has requested that this court stay the case pending the arbitration. However, this court has on prior occasions determined that "[w]here all of the issues raised in a complaint must be submitted to arbitration . . . a dismissal of the action is appropriate, since retaining jurisdiction and staying the action does not serve judicial economy." *Clayton*, 981 F.Supp. at 1451. All of the issues pertaining to AGFC and Stiles must be submitted to arbitration. There is no reason for the court to retain jurisdiction of those claims.

---

5. The text of this statute provides in pertinent part:

> In the event any domestic lender or credit card bank desires to modify in any respect any term of the credit card account, it shall first provide at least 30 days' prior notice, such domestic lender or credit card bank shall advise the debtor in writing that the debtor has the option (i) to surrender the credit card whereupon the debtor shall have the right to continue to pay off the credit card account in the same manner and under the same terms and conditions as then in effect; or (ii) to hold the credit card after the 30–day period has elapsed, or to use the credit card during such period, either of which shall constitute the debtor's consent to the modification.

Since Home Cable has not moved to compel arbitration, nor shown any reason that the court could order arbitration as to it, that portion of the action is retained. It will be set for a status conference in the accompanying order.

Full summary judgment in favor of AGFC is due to be GRANTED.