Rel: 10/24/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2014-2015

_____

### 1130150

_____

**America's Home Place, Inc.**

**v.**

**Gregory Rampey**

**Appeal from Chambers Circuit Court**
**(CV-13-900032)**

MAIN, Justice.

The defendant below, America's Home Place, Inc. ("AHP"), appeals from an order of the Chambers Circuit Court ("the trial court") denying AHP's motion to compel arbitration of

the claims brought by the plaintiff below, Gregory Rampey. We reverse and remand.

## I. Facts and Procedural History

In August 2012, Rampey and AHP entered into a contract, the terms of which provided that AHP would construct a house for Rampey in Chambers County. AHP constructed the house for Rampey; however, after he took possession of the house, Rampey began to notice "settlement and sinking of the foundation," which, according to Rampey, resulted in significant structural and other damage to the house. AHP attempted to stabilize the foundation and to repair the damage to the house that had occurred as a result of the unstable foundation; those efforts, however, were unsuccessful. On March 3, 2013, Rampey filed in the trial court a complaint against AHP. The complaint alleged 10 counts against AHP, each count stemming from the construction of the house that was the subject of the parties' August 2012 contract.

AHP moved to compel arbitration of Rampey's claims and to stay the proceedings in the trial court pending the outcome of arbitration between the parties. In support of its motion, AHP attached the contract between AHP and Rampey. The

1130150

contract stated that "Contractor and Owner agree as follows" and then set forth 46 enumerated provisions. Beside each enumerated provision in the contract (except nos. 4 and 27, which were inapplicable) there was a line for the "owner" (i.e., Rampey) to initial. Rampey admittedly wrote his initials in the line next to every one of the 44 applicable provisions, including provision no. 37 ("the arbitration provision"), which states, in toto:

"BINDING ARBITRATION AGREEMENT

"ALL CLAIMS, DISPUTES AND OTHER MATTERS OR QUESTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, SHALL BE SETTLED BY BINDING ARBITRATION IN ACCORDANCE WITH THE RULES OF AMERICAN ARBITRATION ASSOCIATON [sic] (AAA) AND/OR DEMARS & ASSOCIATES, LTD. (DMA), AND JUDGEMENT UPON THE AWARD RENDERED BY THE ARBITRATOR OR ARBITRATORS MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. THE PARTIES EXPRESSLY AGREE THAT THE ARBITRATOR OR ARBITRATORS SHALL HAVE THE POWER AND AUTHORITY TO GRANT REASONABLE ATTORNEY'S FEES AND COSTS IN RESOLUTION OF THE CLAIMS, DIFFERENCES AND/OR CONTROVERSIES ARISING FROM THIS AGREEMENT WHICH THE PARTIES HAVE AGREED TO SUBMIT TO BINDING ARBITRATION.

"THE DEMAND FOR ARBITRATION SHALL BE IN WRITING AND DELIVERED TO THE OTHER PARTY TO THE AGREEMENT AND THE ARBITRATOR. THE DEMAND FOR ARBITRATION SHALL BE MADE WITHIN A REASONABLE TIME AFTER THE CLAIM, DISPUTE OR OTHER MATTER RELATING TO THIS AGREEMENT HAS ARISEN, AND IN NO EVENT SHALL BE MADE AFTER THE DATE WHEN INSTITUTION OF LEGAL OR EQUITABLE PROCEEDINGS BASED ON SUCH CLAIM, DISPUTE OR OTHER

3

1130150

MATTER WILL BE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

"THE COSTS OF THE ARBITRATOR WILL BE PAID BY THE PARTY WHO IS AT FAULT ON THE POINT BEING ARBITRATED. IN THE EVENT OF MULTIPLE POINTS BEING ARBITRATED THE ARBITRATOR'S FEE WILL BE ALLOCATED ON A PRO RATA BASIS BY THE ARBITRATOR. IF EITHER PARTY FAILS TO ATTEND THE ARBITRATION, SUCH PARTY SHALL PAY FOR THE COSTS OF THE ARBITRATOR, PLUS A $1,000.00 PENALTY FOR LIQUIDATED DAMAGES FOR LOST TIME OF THE PARTY THAT ATTENDED THE ARBITRATION. CONTRACTOR MAY SECURE ITS RIGHTS UNDER THE MECHANIC'S LIEN LAW, AND, SUBSEQUENT TO THE ARBITRATION AWARD, MAY ENFORCE SAID RIGHT AND OBTAIN A LIEN FORECLOSURE JUDGEMENT."

(Capitalization in original.) Immediately beneath the arbitration provision were signature lines for the parties to the contract, including one for "owner," i.e., Rampey. Rampey also initialed provision no. 42, which states: "[Rampey] acknowledges that each paragraph of this contract has been explained and initials acceptance of same. [Rampey] also acknowledges receipt of this agreement." (Emphasis added.) Furthermore, Rampey admittedly signed his name at the bottom of each of the last two pages of the contract.

Rampey filed a response to AHP's motion to compel arbitration. Rampey's sole argument in his response was that his signature on the signature line immediately beneath the arbitration provision was forged, and, thus, he said, there

4

1130150

exists no proof of his intent to arbitrate any disputes between himself and AHP. Rampey did not argue that the contract itself was invalid and/or unenforceable; rather, Rampey argued only that the arbitration provision in the contract was unenforceable because, according to Rampey, his signature immediately beneath the arbitration provision was forged. Rampey supported his response to the motion to compel arbitration with, among other evidentiary documents, his own affidavit, which states:

> "My name is Gregory Rampey. I am a resident citizen of the State of Alabama aged nineteen (19) years or older and have personal knowledge of the facts and matters set forth herein which are true and accurate to the best of my belief and knowledge.
>
> "I am the Plaintiff in the above identified cause and have personal knowledge of the facts set forth in this affidavit.
>
> "On August 29, 2012, I entered into a contract with America's Home Place, Inc.[,] for the construction of a home located at ___ Springfield Avenue, Chambers County, Alabama. This contract contained a binding arbitration agreement on page 5, paragraph 37. (See Contract, attached to Plaintiff[']s Opposition as Exhibit 1). I did not sign the binding arbitration agreement contained within the contract. I do not know who signed my name nor did they have my permission. I had no intention of agreeing to binding arbitration. The forged signature appearing within the binding arbitration clause in no way bears any resemblance

5

1130150

to my actual signature on pages 7-8 of the Contract. (See Contract)."

After a hearing on AHP's motion to compel arbitration, the trial court entered the following order: "[AHP's] Motion to Compel arbitration is denied at this time. [Rampey] has claimed that the signature on the contract is forged. The issue of whether an enforceable agreement to arbitrate exists shall be set for jury trial on the next available jury docket."  AHP appealed.

## II. Standard of Review

"Our standard of review of a ruling denying a motion to compel arbitration is well settled:

"'"This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So. 2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. '[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So. 2d 1260, 1265 n. 1 (Ala.

6

1995) (opinion on application for rehearing)."'"

SSC Montgomery Cedar Crest Operating Co., LLC v. Bolding, 130 So. 3d 1194, 1196 (Ala. 2013) (quoting Elizabeth Homes, L.L.C. v. Gantt, 882 So. 2d 313, 315 (Ala. 2003), quoting in turn Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 280 (Ala. 2000)).

### III. Analysis

The dispositive issue in this case is whether the trial court erred in denying AHP's motion to compel arbitration based on Rampey's allegation that his signature immediately beneath the arbitration provision in the contract was forged. We conclude that the trial court did err. As noted, the contract contains a binding arbitration provision (enumerated provision no. 37 in the contract); Rampey admittedly wrote his initials in the line provided next to the arbitration provision. Also, as noted, provision no. 42 of the contract states: "[Rampey] acknowledges that each paragraph of this contract has been explained and initials acceptance of same. [Rampey] also acknowledges receipt of this agreement"; Rampey admittedly wrote his initials beside that provision. Furthermore, provision no. 39 of the contract states: "This

1130150

Agreement constitutes the sole and entire Agreement between the parties hereto and no modifications of this Agreement shall be binding unless signed by all parties to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto." Moreover, on page 7 of the contract, directly above one of the two places in which Rampey admittedly signed the contract, it states, in pertinent part: "This agreement[, i.e., the contract,] shall be binding on the parties thereto ...." The contract language quoted above shows that Rampey and AHP entered into a binding contract, which Rampey does not dispute, that includes two signatures Rampey agrees are legitimate and that the contract includes a binding arbitration provision. The fact that Rampey's signature immediately beneath the arbitration provision was (allegedly) forged is of no consequence because his signature <u>was not required</u> immediately beneath the arbitration provision and, furthermore, Rampey assented to be bound by that provision when he admittedly wrote his initials on the line next to the arbitration provision. <u>See</u>, <u>e.g.</u>, <u>Stiles v. Home Cable</u>

8

1130150

<u>Concepts, Inc.</u>, 994 F. Supp. 1410 (M.D. Ala. 1998), which

aptly explains the fallacy of Rampey's argument:

> "Stiles'[s] '[f]irst and foremost' objection is that he did not sign the arbitration clause at issue. It is, of course, a matter of general contract law that a party must agree to a contract in order to be bound by it. See <u>Old Republic Ins. Co. v. Lanier</u>, 644 So. 2d 1258, 1260 (Ala. 1994); <u>Roberson v. Money Tree of Ala., Inc.</u>, 954 F. Supp. 1519, 1528 (M.D. Ala. 1997), citing <u>Restatement of Contracts, 2d.</u> § 17. This provision of general contract law applies even if the arbitration clause is subject to the Federal Arbitration Act [('the FAA')]. <u>See</u> 9 U.S.C. § 2 (arbitration clause not enforced where invalid 'upon such grounds as exist at law or in equity for the revocation of any contract'). In addition, the FAA also requires that an arbitration clause be written to be enforceable. 9 U.S.C. § 2 (a 'written provision'); <u>Continental Grain Co. v. Beasley</u>, 628 So. 2d 319, 322 (Ala. 1993).

> "While written agreement is required for arbitration, however, <u>there is no requirement that every single provision of a contract, including the arbitration clause, must be signed in order to form part of the agreement</u>. Indeed, it is axiomatic that <u>'parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated</u>.' 17A Am. Jur. 2d § 185. ... The FAA has no separate requirement of a signed arbitration clause. As noted by the Northern District of Alabama, '[i]t is well established that a written agreement to arbitrate need not be signed by the parties as a prerequisite to the enforcement of the agreement.' <u>Middlebrooks v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, [No. CV 89-HM-5015-NW, April 5, 1989] (N.D. Ala. 1989) [not reported in F. Supp.].

9

"Stiles has cited this court to three cases which allegedly stand for the proposition that he must sign an arbitration agreement for it to be enforceable. His reliance is misplaced, however. The first that he cites, Old Republic Ins. Co., 644 So. 2d at 1260, only stands for the proposition that a party must agree to a contract to be bound by it. The second, Continental Grain Co., 628 So. 2d at 322, merely notes that the FAA requires arbitration clauses to be written. Finally, the third, Ex parte Jones, 686 So. 2d 1166 (Ala. 1996), only stands for the proposition that someone who is 'not a party to the contract containing the arbitration agreement' may not compel arbitration. None states the proposition that the arbitration clause itself must be signed. Indeed, these cases could not state that proposition. Alabama law is not permitted by the FAA to treat arbitration clauses any differently than other contracts. See Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 686–87, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902 (1996) ('Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions') (emphasis in original); Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265, 281, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) (FAA makes unlawful any state policy that 'would place arbitration clauses on an unequal "footing"'). Because Alabama law only requires the contract to be signed (and only certain contracts at that), and does not require every single provision of every contract to be signed, it could not require the arbitration clause at issue here to be signed. Doctor's Assoc., 517 U.S. at 682–84, 116 S. Ct. at 1654 (holding that Montana law cannot require special notice provisions in arbitration contracts).

"Stiles assented to the contract as a whole in this case. That fact is uncontested. ... Stiles has, therefore, assented to an arbitration clause, even absent his signature. ... The provision is not invalid because not signed."

_Stiles_, 994 F. Supp. at 1416 (initial emphasis added).

Furthermore, it is well settled that

> "[a] plaintiff cannot seek the benefits of a contract but at the same time avoid the arbitration provision in the contract. _Wolff Motor Co. [v. White]_, 869 So. 2d [1129,] 1136 [(Ala. 2003)]. Instead, 'she must accept or reject the entire contract.' _Credit Sales, Inc. v. Crimm_, 815 So. 2d 540, 546 (Ala. 2001). _Britta's claims, including her breach-of-contract claim, rely on the contract to support her claims for damages. Therefore, she is bound by the arbitration provision in the contract._ _Infiniti of Mobile, Inc. v. Office_, 727 So. 2d 42, 48 (Ala. 1999)[1]; _Delta Constr. Corp. v. Gooden_, 714 So. 2d 975, 981 (Ala. 1998)."

_Bowen v. Security Pest Control, Inc._, 879 So. 2d 1139, 1143 (Ala. 2003) (emphasis added). _See_ _also_ _Southern Energy Homes, Inc. v. Ard_, 772 So. 2d 1131, 1134-35 (Ala. 2000) ("A plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions." (citing _Value Auto Credit, Inc. v. Talley_, 727 So. 2d 61 (Ala. 1999); _Infiniti of Mobile, Inc. v. Office_, 727 So. 2d 42 (Ala. 1999);

---

[1]Notably, in _Infiniti of Mobile, Inc._, a plurality of this Court concluded that, "[b]ecause the undisputed evidence indicates that the second retail-buyer's-order form represents the final contract between Mr. Office and Infiniti, and _because Mr. Office clearly initialed the arbitration provisions appearing on both the front side and the reverse side of that contract, we must conclude that Mr. Office agreed to arbitrate his claims against Infiniti_." 727 So. 2d at 47 (emphasis added).

<u>Georgia Power Co. v. Partin</u>, 727 So. 2d 2 (Ala. 1998); <u>Delta Constr. Corp. v. Gooden</u>, 714 So. 2d 975 (Ala. 1998); and <u>Ex parte Dyess</u>, 709 So. 2d 447 (Ala. 1997))).

Here, Rampey, whose claims are all predicated on alleged breaches and violations of the contract, attempts to claim the benefits of the contract while repudiating one of its conditions, i.e., the binding arbitration provision. However, as noted, Rampey must "'accept or reject the entire contract.'" <u>Bowen</u>, 879 So. 2d at 1143 (quoting <u>Credit Sales, Inc. v. Crimm</u>, 815 So. 2d 540, 546 (Ala. 2001)). As was the case in <u>Bowen</u>, Rampey's claims, including his breach-of-contract claim, rely on the contract for support. Thus, Rampey is bound by <u>all</u> the provisions of the contract, including the arbitration provision. Accordingly, we conclude that the trial court erred in denying AHP's motion to compel arbitration.[2]

---

[2]Rampey offers, as an alternative basis for affirming the trial court's denial of the motion to compel arbitration, the argument that AHP presented no evidence "showing that the arbitration agreement involved or affected interstate commerce." Rampey's brief, at 13. <u>See</u>, <u>e.g.</u>, <u>Elizabeth Homes, L.L.C. v. Gantt</u>, 882 So. 2d 313, 315 (Ala. 2003) ("'The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce.'" (quoting <u>Fleetwood Enters., Inc.</u>, 784

1130150

<u>IV. Conclusion</u>

The trial court erred in denying AHP's motion to compel arbitration. Therefore, we reverse the trial court's order and remand the cause to that court with instructions to vacate its order denying the motion to compel arbitration and to enter an order granting AHP's motion to compel arbitration.

REVERSED AND REMANDED WITH DIRECTIONS.

Stuart, Bolin, Parker, Wise, and Bryan, JJ., concur.

Murdock and Shaw, JJ., concur in the result.

---

So. 2d at 280)). However, Rampey did not raise that argument in the trial court; therefore, the argument is waived on appellate review. <u>See</u>, <u>e.g.</u>, <u>Andrews v. Merritt Oil Co.</u>, 612 So. 2d 409, 410 (Ala. 1992) ("This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court."). Furthermore, even if it were not waived, we could conclude that the argument is unavailing because the contract shows that the house was built in Alabama by AHP, which listed its place of business as being in "Hall County, Gainesville, GA." <u>See</u> <u>Hurst v. Tony Moore Imports, Inc.</u>, 699 So. 2d 1249, 1257 (Ala. 1997) ("[I]f <u>any</u> effect on interstate commerce can be found in a commercial transaction, then the transaction is considered to be one involving interstate commerce.").

13

1130150

MURDOCK, Justice (concurring in the result).

The main opinion correctly concludes that "Rampey assented to be bound by [the arbitration] provision when he admittedly wrote his initials on the line next to [that] provision" and signed his name in the signature lines at the end of the contract. ___ So. 3d at ___. I agree, and, based on general principles of contract law, I find this conclusion sufficient to the end achieved here. I therefore find it unnecessary to rely, as does the main opinion, upon the decision in Stiles v. Home Cable Concepts, Inc., 994 F. Supp. 1410 (M.D. Ala. 1998). In fact, I find Stiles to be inapposite to the present case.

First, the statements from Stiles quoted in the main opinion, see ___ So. 3d at ___, were made in the context of an arbitration clause that, on the one hand, was not accompanied by a signature line dedicated specifically to that clause and, on the other hand, was not initialed by the party resisting arbitration. In this context, the key passage from the Stiles opinion quoted in the main opinion, i.e., "'there is no requirement that every single provision of a contract, including the arbitration clause, must be signed in order to

14

form part of the agreement,'" ___ So. 3d at ___ (emphasis omitted), lacks significant probative value in a case, such as this one, where the arbitration clause is accompanied by an unsigned signature line dedicated solely to that clause.

In addition to its lack of significant probative value as to the peculiar facts presented in this case, I am reluctant to rely upon Stiles for another reason. In Stiles the federal district court went so far as to impose upon a consumer a requirement to arbitrate pursuant to a provision in an original contract that did not mention arbitration but instead purported to allow a credit-card issuer to change any of the terms of the agreement between it and the consumer by unilateral notification so long as the consumer did not reject the proposed changes in writing within a prescribed period following such notification. Regardless of whatever merit this holding may have in regard to a consumer contract such as the one at issue in Stiles, I see no reason to quote with approval from a decision that goes this far in order to achieve the result achieved in the present case.

I also find inapposite to the present case the principle invoked in that portion of the main opinion that follows its

15

1130150

invocation of <u>Stiles</u>.  Specifically, the main opinion seizes upon the proposition that "'[a] plaintiff cannot seek the benefits of a contract but at the same time avoid the arbitration provision <u>in the contract</u>.'"  ___ So. 3d at ___ (quoting <u>Bowen v. Security Pest Control, Inc.</u>, 879 So. 2d 1139, 1143 (Ala. 2003)).  The only argument made by Rampey in the present case, however, is that, because he did not sign the signature line dedicated to the arbitration provision, the arbitration provision is <u>not</u> "in the contract."  He does not go further and argue that, even if that arbitration provision is part of the contract, he would not be bound by it for some reason, even as he seeks to benefit from other parts of the contract.  The stated principle is therefore inapposite.

16