Elizabeth Homes, L.L.C., appeals from the trial court's denial of its motion to compel arbitration. We reverse and remand.
 Background
Elizabeth Homes, an Alabama limited liability company, is in the business of constructing single-family, semicustom residential structures. Customers of Elizabeth Homes select a design from the house plans available; according to Elizabeth Homes, the customers are then allowed to modify those plans to meet their individual needs and tastes.
Roy G. Gantt and Patty R. Gantt are residents of Elmore County. On or about March 7, 2001, they contracted with Elizabeth Homes for the construction of an "Ambassadore" style house on property the Gantts owned in Wetumpka. The Gantts agreed to pay Elizabeth Homes $76,500 for the construction of the house. The Gantts entered into a purchase agreement with Elizabeth Homes; that agreement contained the following language:
 "Company and Purchaser acknowledge that this agreement necessarily involves interstate commerce by virtue of the materials and components contained in the dwelling and each of the undersigned hereby agrees to arbitrate any and all disputes arising under this agreement and to be bound by the decision of the arbitrator which shall be conducted pursuant to the Construction Industry Rules of the American Arbitration Association."
Elizabeth Homes provided a one-year warranty on its construction.
Elizabeth Homes completed the Gantts' house in December 2001. In June 2002, the Gantts notified Elizabeth Homes of numerous defects and deficiencies in the house. The Gantts allege that Elizabeth Homes failed to repair the defects properly and that many of the defects cannot be repaired.
On January 16, 2003, the Gantts sued Elizabeth Homes, James D. Flanagan,[1] and Carl Smith[2] in the Elmore Circuit Court, alleging breach of warranty, negligence and/or wantonness, fraudulent misrepresentation, breach of contract, breach of an implied warranty of habitability, unjust enrichment, and breach of implied duties of good faith and fair dealing.
Elizabeth Homes filed a motion seeking to enforce the Gantts' agreement to arbitrate "any and all disputes arising under" the purchase agreement. In support of that motion, Elizabeth Homes submitted a copy of the Gantts' purchase agreement, the affidavit of Earnest Dean, the president of Greenville Cash Carry, Inc., and the affidavit of James D. Flanagan.
Dean testified as follows in his affidavit: *Page 315 
 "Elizabeth Homes purchases the majority of its building supplies from Greenville Cash Carry, Inc. Subsequent to entering into a home-building contract with its clients, an agent of Elizabeth Homes faxes an order for the specific building supplies necessary to complete each contract to my store. Upon receipt of said order, a Buyer employed by Greenville Cash 
Carry, Inc. arranges with the necessary suppliers to deliver the specified materials to Greenville Cash 
Carry, Inc., solely for purchase and use by Elizabeth Homes. These materials are specially ordered for Elizabeth Homes and, thus, do not become part of Greenville Cash Carry, Inc.'s general inventory."
In his affidavit, Dean also identified the components ordered by Greenville Cash Carry from out-of-state suppliers for Elizabeth Homes; those components include flooring, decking, and plasterboard. Other components Dean ordered from out-of-state suppliers specifically for the Gantts' house included roofing materials, windows, exterior insulation, shutters, lumber, and metals.
Flanagan, the managing member of Elizabeth Homes, testified in his affidavit that the total expenses, including all materials and labor, incurred by Elizabeth Homes for constructing the Gantts' house was $61,443.76. According to Flanagan, the materials obtained by Greenville Cash Carry from out-of-state sources represented 15% of that total expense. Flanagan also testified that the total expense for materials, excluding labor, used in the Gantts' house was $29,485.65. According to Flanagan, the materials obtained by Greenville Cash Carry from out-of-state sources totaled 31% of that amount.
The Gantts opposed the motion to compel arbitration, arguing that, under Sisters of the Visitation v. Cochran PlasteringCo., 775 So.2d 759 (Ala. 2000), their transaction with Elizabeth Homes did not involve interstate commerce.
On May 27, 2003, the trial court denied Elizabeth Homes' motion.[3] Elizabeth Homes appeals pursuant to Rule 4(d), Ala. R.App. P.
 Standard of Review "This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. `[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing)."
Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (emphasis omitted).
 Analysis
On June 2, 2003, the United States Supreme Court in CitizensBank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037, 2040,156 L.Ed.2d 46 (2003), rejected the test set out *Page 316 
in Sisters of the Visitation. The Alafabco Court stated:
 "We have interpreted the term `involving commerce' in the FAA [Federal Arbitration Act] as the functional equivalent of the more familiar term `affecting commerce' — words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Allied-Bruce Terminix Cos. [v. Dobson], 513 U.S. [265], at 273-274, 115 S.Ct. 834[, 130 L.Ed.2d 753] [(1995)]. Because the statute provides for the `enforcement of arbitration agreements within the full reach of the Commerce Clause,' Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually `in commerce' — that is, `within the flow of interstate commerce,' Allied-Bruce Terminix Cos., supra, at 273, 115 S.Ct. 834 (internal quotation marks, citation, and emphasis omitted).
 "The Supreme Court of Alabama was therefore misguided in its search for evidence that a `portion of the restructured debt was actually attributable to interstate transactions' or that the loans `originated out-of-state' or that `the restructured debt was inseparable from any out-of-state projects.' [Alafabco v. Citizens Bank, 872 So.2d 798, 805
(Ala. 2002)]. Such evidence might be required if the FAA were restricted to transactions actually `"in commerce,"' Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195-196, 95 S.Ct. 392, 42 L.Ed.2d 378
(1974), but as we have explained, that is not the limit of the FAA's reach.
 "Nor is application of the FAA defeated because the individual debt-restructuring transactions, taken alone, did not have a `substantial effect on interstate commerce.' [872 So.2d at 803.] Congress' Commerce Clause power `may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.' Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948). See also Perez v. United States, 402 U.S. 146, 154, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); Wickard v. Filburn, 317 U.S. 111, 127-128, 63 S.Ct. 82, 87 L.Ed. 122 (1942). Only that general practice need bear on interstate commerce in a substantial way. Maryland v. Wirtz, 392 U.S. 183, 196-197, n. 27, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968); NLRB v. Jones Laughlin Steel Corp., 301 U.S. 1, 37-38, 57 S.Ct. 615, 81 L.Ed. 893 (1937)."
Alafabco, 539 U.S. at 56-57, 123 S.Ct. at 2040.
Thus, in light of Alafabco, we no longer apply the "substantial impact on interstate commerce" test adopted inSisters of the Visitation, supra. As the United States Supreme Court stated, the Federal Arbitration Act is triggered even in "`individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.'" Alafabco, 539 U.S. at 56, 123 S.Ct. at 2040. Therefore, "[a] `party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract involves a transaction affecting interstate commerce.'" Tefco Fin. Co. v. Green,793 So.2d 755, 758 (Ala. 2001) (quoting Ex parte Caver,742 So.2d 168, 172 n. 4 (Ala. 1999)).
In this case, Elizabeth Homes established the existence of an agreement calling for arbitration. Elizabeth Homes also established that the transaction at *Page 317 
issue — the construction and sale of the Gantts' house — involved interstate commerce. The Gantts have not produced sufficient evidence to refute this showing.[4]
We therefore reverse the order of the trial court denying arbitration, and we remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, BROWN, and HARWOOD, JJ., concur.
[1] James D. Flanagan is the managing member of Elizabeth Homes, L.L.C. He is identified in the complaint as "Jimmy Flanagan"; he is identified in the record as "James D. Flanagan, Jr."
[2] The complaint identifies Carl Smith as a domestic corporation doing business in Elmore County. However, Elizabeth Homes identifies Carl Smith as the office manager for Elizabeth Homes. (Elizabeth Homes' brief at p. 4.)
[3] The trial court's order was initially dated February 27, 2003. The trial court subsequently corrected this date to May 27, 2003.
[4] The Gantts' only argument to the trial court was that the transaction did not meet the interstate-commerce requirement. They did not file a brief with this Court.