PER CURIAM.
These consolidated cases arise out of an action brought in the Elmore Circuit Court by Guy R. Willis against three defendants: Alaska Bush Adventures, LLC (“Alaska Bush”), Hugh Les Krank, and Ryan L. Krank (Alaska Bush and the Kranks are hereinafter collectively referred to as “the defendants”); the Kranks are the owners and operators of Alaska Bush. In case no. 1130184, the defendants petition for a writ of mandamus directing the trial court to vacate its order denying their motions to dismiss the action for lack of personal *1197 jurisdiction. In case no. 1130231, the defendants appeal from the trial court’s denial of their motion to compel arbitration. In case no. 1130184, we deny the petition; in case no. 1130231, we reverse and remand.

Facts and Procedural History

According to the record on appeal and the materials before us on the petition for the writ of mandamus, Alaska Bush, a business formed in Alaska, provides guided hunting trips in that state. In December 2011, Willis entered into a written contract with Alaska Bush pursuant to which Alaska Bush would lead a guided hunting trip in Alaska. That contract is entitled “Guide/Outfitter Contract/Security Agreement between Alaska Bush Adventures LLC and: Guy Willis.” Willis also claims that he entered into a separate oral contract to hunt black bears during that guided hunting trip. The guided hunting trip took place in September 2012.
On November 5, 2012, Willis sued the defendants in the Elmore Circuit Court, seeking damages for breach of contract, misrepresentation, and suppression.[1] Willis’s claims against the defendants centered primarily on his allegations that the equipment Alaska Bush provided for the hunting expedition was inadequate in number, unsafe, and inoperable, and he also alleged that he lost hunting time because the defendants were providing services to other hunters who were apparently not included in the guided hunting trip. Willis claimed that he lost most of his personal hunting equipment and had to leave the trip early because he “was caused to be thrown from an improperly repaired, inspected, and/or working motorized boat....” Willis further alleged that the defendants misrepresented the quantity of wild game that would be available on the hunt.
On December 19, 2012, Willis filed an application for the entry of a default judgment against Ryan, and, on the following day, he filed a similar application against Alaska Bush and Hugh. On December 21, 2012, the defendants filed an answer to Willis’s complaint and an objection to Willis’s applications for entry of a default judgment.
On January 2, 2013, the defendants filed a motion to compel Willis to arbitration pursuant to an arbitration agreement found in the written contract. On January 11, the defendants each filed an individual motion to dismiss Willis’s complaint for lack of personal jurisdiction.
Subsequently, the trial court issued an order denying the defendants’ respective motions to dismiss and their motion to compel arbitration. In case no. 1130184, the defendants petition this Court for a writ of mandamus challenging the denial of their motions to dismiss for lack of personal jurisdiction; in case no. 1130231, they appeal the trial court’s denial of their motion to compel arbitration.

Case no. 1130181.

Upon review of the materials submitted in support of this petition for a writ on mandamus, we deny the petition. Because we are denying the defendants’ petition, we address the defendants’ appeal from the order denying their motion to compel arbitration.
Case no. 1130231
In case no. 1130231, the defendants appeal from the denial of their motion to compel arbitration. We reverse and remand.

*1198
A. Standard of Review

“Our standard of review of a ruling denying a motion to compel arbitration is well settled:
“ ‘ “This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala.2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. ‘[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.’ Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (opinion on application for rehearing).” ’
“Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala.2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000)).”
SSC Montgomery Cedar Crest Operating Co. v. Bolding, 130 So.3d 1194, 1196 (Ala.2013).

B. Analysis

In this case, the defendants supported their motion to compel arbitration with, among other evidence, the written contract between Willis and the defendants, which contains the following arbitration clause:
“Alaska Bush Adventures, LLC agree that they will try to minimize risk to all customers, but due to unforeseen circumstances, the undersigned customer agrees to waive all Lability claims against this company and their affiliates, agreeing that any and all disputes with Alaska Bush Adventures, LLC be settled by arbitration conducted in the state of Alaska where the Corporation’s office is located. Please contact me if you have any questions. If you have carefully read this contract and are satisfied with these arrangements and with the terms and conditions, please sign and return it to me with your down payment.”
(Emphasis added.) The defendants presented a properly supported motion to compel arbitration demonstrating “the existence of a contract calling for arbitration,” [2] see SSC Montgomery Cedar Crest, supra; thus, the burden then shifted to Willis to present evidence indicating that the arbitration clause was “not valid or does not apply to the dispute in question.” Id.
Willis argued in the trial court and he now argues on appeal that the arbitration clause is not enforceable because, he says, “the arbitration agreement in the written contract between the parties was induced by fraud.” Willis argues on appeal that the arbitration clause was induced by fraud because, he says, “as an examination of the written contract between the parties reveals, the arbitration clause in that contract was obscured in unhighlighted small print at the bottom of the document.” Furthermore, Willis argued in the trial court and he now argues on appeal that there exists a separate oral contract to hunt black bears during the guided hunt *1199 ing trip, and, he says, the oral contract is not governed by the arbitration clause in the written contract.
First, as to Willis’s claim that the arbitration clause was induced by fraud on the part of the defendants, the defendants correctly state that “[n]o evidentiary materials of record support Willis’[s] arguments.” Indeed, the record on appeal is entirely devoid of any evidence supporting Willis’s argument on this issue. Notably, Willis’s brief provides no example of the allegedly fraudulent misrepresentations the defendants used to procure Willis’s signature on the arbitration clause in the written contract. Rather, Willis generally recites that the arbitration clause was procured by fraud, recites that he raised that issue in the trial court, and then concludes that the trial court did not err in denying the defendants’ motion to compel arbitration. None of the documents in the record to which he cites contains evidence supporting an allegation that the arbitration clause was induced by fraud on the part of the defendants.
Next, Willis argues that the arbitration clause was induced by fraud because the language of that clause was in “unhigh-lighted small print” at the bottom of the written contract. As the defendants correctly noted: “The arbitration clause is set forth in the same size print and the same font as the rest of the contract terms, and is located in the body of the one-page contract.” Therefore, this argument provides no basis for concluding that the arbitration clause was induced by fraud or was otherwise unenforceable. See Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131, 1135 (Ala.2000) (“Because, in all other respects, the arbitration language is just as conspicuous as the other provisions of the warranty ..., we find that it is a binding part of the warranty.”). See also Advance Tank & Constr. Co. v. Gulf Coast Asphalt Co., 968 So.2d 520, 528 (Ala.2006) (noting that no “special disclosure” is required to point out the existence of an arbitration provision in a contract).
Finally, we see no merit in Willis’s argument that there exists a separate oral contract and that the existence of that oral contract supports a denial of the motion to compel arbitration. First, the arbitration clause provides that “any and all disputes” between the parties are to be settled by arbitration. This broad language alone indicates that the scope of the arbitration clause would encompass any “dispute” between the parties related to any subsequent oral contract between these parties as to this subject. Additionally, and most importantly, the terms of the purported oral contract are actually found as part of the written contract. Specifically, the written contract between the parties states that Willis had “tentatively scheduled the following hunt: A one client to one guide hunt for Moose, Brown/Grizzly Bear and Fishing.” The written contract also states that “Black Bear can be added to the hunt for an additional $800.00 each.” After executing the written contract, the defendants sent Willis a document entitled “Important Contract Addendum & Information,” which required Willis to complete and sign several forms and return the forms to the defendants. One of the forms Willis was required to complete, sign, and return to the defendants was a “Medical Information Form.” On that form, Willis was asked to provide, among other things, “[a]ny information to make [his] trip more comfortable”; Willis completed that portion of the form by stating that he desired to “[g]et a Trophy Moose/Grizzly/Bfecfc Bear[] Wolf [Wolverine, [and] catch Lots of fish.” (Emphasis added.) The defendants did not object to Willis’s statement on the “Medical Information Form” that he wanted to hunt black bear, and, in fact, the *1200 record on appeal shows that Willis paid an additional $800 fee to hunt “for a Black Bear.” Thus, in the addendum to the written contract, the parties evidenced their intention to add a hunt for black bear, wolf, and wolverine to the guided hunting trip for which the parties had originally contracted. As stated by the defendants: “Willis merely added another species to be hunted, which was an option set forth in the original contract.” Accordingly, Willis’s hunt for black bear was expressly governed by the provisions of the written contract containing the arbitration clause.
In sum, after the defendants presented a properly supported motion to compel arbitration, the burden then shifted to Willis to present evidence indicating that the arbitration clause is not valid or that it does not apply to the dispute in question; Willis failed to do either. Therefore, the trial court erred in denying the defendants’ motion to compel arbitration.[3]

C. Conclusion

The trial court’s order denying the motion to compel arbitration is reversed and the cause remanded for the trial court to enter an order granting the motion.
1130184 — PETITION DENIED.
MOORE, C.J., and STUART, PARKER, and MAIN, JJ., concur.
SHAW and BRYAN, JJ., and LYONS, Special Justice,* concur specially.
BOLIN and MURDOCK, JJ., dissent.
WISE, J., recuses herself.
1130231 — REVERSED AND REMANDED.
STUART, PARKER, SHAW, MAIN, and BRYAN, JJ., and LYONS, Special Justice,* concur.
MOORE, C.J., and BOLIN and MURDOCK, JJ., dissent.
WISE, J., recuses herself.

. Willis also sought damages on a tort-of-outrage theory.

. There is no dispute that “the contract evidences a transaction affecting interstate commerce.”

. The terms of the arbitration clause cover only disputes between Alaska Bush and Willis. However, the written contract containing the arbitration clause was signed on behalf of Alaska Bush by its agents, Hugh and Ryan. See Ex parte Carter, 66 So.3d 231 (Ala.2010) ("[T]his Court has stated that a 'corporation is a legal entity, an artificial person, and can only act through agents’ Townsend Ford, Inc. v. Auto-Owners Ins. Co., 656 So.2d 360, 363 (Ala.1995), and that agents 'stand in the shoes’ of their principals and can enforce certain contractual agreements... .’’(emphasis added)).