PER CURIAM.
*571 Rainbow Cinemas, LLC ("Rainbow"), Ambarish Keshani, and Harshit D. Thakker (hereinafter collectively referred to as "the defendants") appeal the Madison Circuit Court's order denying their motion to compel arbitration of a contract dispute with Consolidated Construction Company of Alabama ("CCC").
Facts and Procedural History
On April 14, 2015, Rainbow and CCC entered into a contract ("the contract"). In the contract, CCC agreed to provide specified services in constructing a movie theater for Rainbow.[1] The contract consists of two documents. First, the parties signed the American Institute of Architects "Document A101-2007-Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum" ("the agreement"). The agreement incorporates by reference American Institute of Architects "Document A201-2007-General Conditions of the Contract for Construction" ("the general conditions").
The agreement contains an article entitled "Dispute Resolution." Section 6.1 in this article, entitled "Initial Decision Maker," states: "The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of [the general conditions], unless the parties appoint ... another individual, not a party to this Agreement, to serve as Initial Decision Maker." The agreement identifies "Hay Buchanan Architects, P.C." as the architect. Section 15.2 of the general conditions, entitled "Initial Decision," sets forth the extensive process by which the parties are to obtain an initial decision on a claim. Section 15.2.1 of the general conditions requires that any claim arising from the contract "be referred to the Initial Decision Maker for initial decision." Section 15.2.1 further states that "an initial decision shall be required as a condition precedent to mediation of any Claim arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been rendered."
Section 6.2 of the agreement, entitled "Binding Dispute Resolution," states: "For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of [the general conditions], the method of binding dispute resolution shall be ... Arbitration pursuant to Section 15.4 of [the general conditions]." Section 15.3.1 of the general conditions states that "Claims disputes, or other matters in controversy arising out of or related to the Contract ... shall be subject to mediation as a condition precedent to binding dispute resolution." Section 15.3.2 sets forth the mediation process.
Section 15.4 of the general conditions, entitled "Arbitration," states:
"§ 15.4.1 If the parties have selected arbitration as the method for binding dispute resolution in the [a]greement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually *572 agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the [a]greement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.
"....
"§ 15.4.2 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.
"§ 15.4.3 The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the [a]greement shall be specifically enforceable under applicable law in any court having jurisdiction thereof."
The Construction Industry Arbitration Rules of the American Arbitration Association ("the AAA") in effect on the date of the agreement, which are referenced in § 15.4.1 of the general conditions, state, in pertinent part:
"R-9 Jurisdiction
"(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.
"(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part."
During the course of CCC's performance under the contract, a dispute arose between Rainbow and CCC. On August 24, 2015, in accordance with the contract, CCC referred its claim to the initial decision maker, which was the architect, Hay Buchanan. In a letter dated October 30, 2015, counsel for CCC informed counsel for Rainbow that
"[t]he Initial Decision Maker was unable to issue any decision on the Claim within the required time period, partially or entirely as a result of interference by [Rainbow]. Notwithstanding that interference and lack of decision, and in an effort to continue to comply with the [c]ontract ..., CCC demands that [Rainbow] file for mediation ...."
On November 25, 2015, CCC made a request for mediation to be administered by the AAA. It appears that CCC's claim was not resolved by mediation. On July 6, 2016, CCC filed a demand for arbitration of its claim.
On July 28, 2016, after having already initiated the arbitration process, CCC sued the defendants. Among other things, CCC alleged that the defendants had fraudulently induced it into entering into the contract. Specifically, CCC alleged that the defendants knew that the contract required an initial decision maker and that the defendants also "knew they had not contracted for [initial-decision-maker] services from the [initial decision maker]." CCC alleges that the defendants "failed to inform CCC ... that Rainbow had not contracted with Buchanan to act as [the initial decision maker]."
On August 8, 2016, CCC filed a motion with the AAA requesting that the arbitration proceedings CCC had initiated be stayed.
On August 29, 2016, the defendants filed in the circuit court a motion to compel arbitration. The defendants argued that the validity of the arbitration clause in the contract "is something that must be decided by the arbitrator." On the same day, *573 the defendants also filed a motion to dismiss CCC's complaint against Keshani and Thakker, arguing that CCC failed to state a claim upon which relief could be granted, Rule 12(b)(6), Ala. R. Civ. P., and that CCC failed to plead its fraud claim with particularity, Rule 9(b), Ala. R. Civ. P.
On October 17, 2016, the circuit court entered an order denying both the defendants' motion to compel arbitration and Keshani's and Thakker's motion to dismiss. The defendants appealed from the denial of their motion to compel arbitration. On November 8, 2016, the AAA denied CCC's motion to stay the arbitration proceedings.
Standard of Review
"Our standard of review of a ruling denying a motion to compel arbitration is well settled:
" ' "This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id.'[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing)." '
" Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) )."
SSC Montgomery Cedar Crest Operating Co. v. Bolding, 130 So.3d 1194, 1196 (Ala. 2013).
Discussion
It is undisputed that the defendants met their initial burden "of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce." SSC Montgomery Cedar Crest, supra. Thus, the burden then shifted to CCC to present evidence indicating that the arbitration clause was "not valid or does not apply to the dispute in question." SSC Montgomery Cedar Crest, supra.
CCC argued in the circuit court that the contract is not enforceable because, it says, the contract was induced by fraud. CCC argued that it was induced to enter into the contract, in part, based on the inclusion of the initial-decision process. The contract appointed Buchanan as the initial decision maker. However, CCC argued that it was the defendants' role to contract with Buchanan to act as the initial decision maker under the contract and that the defendants knowingly failed to do so. CCC further argued in the circuit court that the defendants suppressed this information and "knowingly and intentionally misrepresented the fact that Rainbow had contracted with Buchanan to act as [the initial decision maker]."
The defendants argue on appeal that "CCC failed to present substantial evidence of its fraud claim." Defendants' brief, at p. 20. As the defendants note, this Court has stated that, "[t]o avoid arbitration, '[a] party must provide substantial evidence of fraud in the inducement, particularly related to the arbitration *574 clause.' " Massey Auto., Inc. v. Norris, 895 So.2d 215, 218 (Ala. 2004) (quoting Ex parte Perry, 744 So.2d 859, 863 (Ala. 1999) (plurality decision)); see also Harold Allen's Mobile Home Factory Outlet, Inc. v. Early, 776 So.2d 777, 784 (Ala. 2000) (noting that a party arguing that it was fraudulently induced into signing an arbitration agreement must prove the alleged fraudulent inducement by substantial evidence). Of course, if a party must prove the alleged fraudulent inducement by substantial evidence, it follows that "[m]erely alleging fraudulent inducement as to the arbitration clause in an agreement" does not allow a party to avoid the arbitration agreement. Ex parte Perry, 744 So.2d at 863. The defendants argue that "CCC has not presented any evidence-let alone substantial evidence-of fraudulent inducement by the [defendants] related to the arbitration clause." Defendants' brief, at p. 21. CCC presents no argument to rebut this particular argument of the defendants.
The defendants are correct. The allegations in CCC's complaint are based on its assertion that the defendants failed to retain Buchanan as the initial decision maker under the contract, that the defendants misrepresented that fact to or suppressed that fact from CCC, and that CCC relied on this fact to its detriment. The defendants specifically denied CCC's allegations in their answer. CCC has not presented any evidence to support the allegations in its complaint. The only evidence submitted by the parties is the contract and the October 30, 2015, letter from CCC's counsel to Rainbow's counsel. This evidence does not indicate that the defendants failed to retain Buchanan as the initial decision maker or that Buchanan refused to make an initial decision on CCC's claim because he had not been retained by the defendants as the initial decision maker. We conclude that CCC has failed to provide substantial evidence in support of its fraud claim and, thus, has failed to demonstrate that the contract is not enforceable.
The defendants proved the existence of the contract, which contains the arbitration provision, and it is undisputed that the contract affects interstate commerce. The burden then shifted to CCC. CCC has failed to present any evidence, let alone substantial evidence, indicating that the contract is unenforceable. Accordingly, the circuit court erred in denying the defendants' motion to compel arbitration.
Although CCC did not raise any argument to rebut the defendants' argument discussed above, CCC does argue, for the first time on appeal, that the circuit court's denial of the defendants' motion to compel arbitration "is due to be affirmed because [the defendants] have failed to satisfy, and cannot now satisfy, conditions precedent necessary for requiring [CCC] to arbitrate its claims." CCC's brief, at p. 18. CCC notes that the contract requires that two conditions be satisfied before arbitration can be initiated. First, a party desiring to initiate arbitration proceedings must submit his claim to the initial-decision process. Second, assuming a controversy still exists after the initial-decision process, a party desiring to initiate arbitration must then submit his claim to mediation. Only after both the initial-decision process and mediation have failed may a party initiate arbitration proceedings under the contract. CCC argues that it is impossible for the defendants to satisfy those conditions precedent because the defendants did not retain Buchanan as the initial decision maker, thus foreclosing the initial-decision process. Accordingly, CCC argues, the circuit court properly denied the defendants' motion to compel arbitration.
*575 The defendants argue that whether conditions precedent to arbitration have been satisfied is an issue to be decided by the arbitrator, not the courts. In so arguing, the defendants rely upon Brasfield & Gorrie, L.L.C. v. Soho Partners, L.L.C., 35 So.3d 601 (Ala. 2009), in which this Court considered the same issue. In Brasfield, an owner contracted with a contractor to construct two structures. The contract between the owner and the contractor contained a dispute-resolution process nearly identical to the dispute-resolution process set forth in the contract. The contract in Brasfield required that, before a party could initiate arbitration, the party had to submit its claim to the architect for an initial decision. After exhausting the initial-decision process, the party then had to submit its claim to mediation. After exhausting mediation, the party could then initiate arbitration proceedings.
A dispute arose between the owner and the contractor. Instead of first seeking an initial decision or mediation, the contractor submitted its claim directly to the AAA for arbitration. The owner filed a lawsuit seeking to stay the arbitration proceedings, alleging that the contractor had failed to satisfy the conditions precedent to arbitration. The contractor filed a motion to compel arbitration, which the trial court denied. The contractor appealed.
On appeal, the contractor argued "that it is for the arbitrator, and not the court, to decide whether conditions precedent to arbitration in a contract have been met." Brasfield, 35 So.3d at 605. Relying on Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), this Court agreed: "[O]ur review of Howsam convinces us that [the owner's] and [the contractor's] contractual obligation to submit claims first to the architect for decision and then to mediate before invoking arbitration is the same kind of 'condition precedent to an obligation to arbitrate' that Howsam presumed would be decided by the arbitrator." Brasfield, 35 So.3d at 606. This Court concluded that "this case presents a question of procedural arbitrability[2] that should be decided by the arbitrator." Id. at 608.
This case, like Brasfield, presents a question of procedural arbitrability that should be decided by the arbitrator. CCC's argument does not demonstrate that the circuit court properly denied the defendants' motion to compel arbitration.
CCC also argues on appeal, as it did before the circuit court, that, even if it is compelled to arbitrate its claims against Rainbow, CCC cannot be compelled to arbitrate its claims against Keshani and Thakker, who did not sign the contract in their individual capacities. CCC argued below that it has no contractual agreement with Keshani and Thakker and, thus, that it cannot be compelled to arbitrate its claims against them. The defendants argue that whether CCC must arbitrate its claims against Keshani and Thakker is an *576 issue to be decided by the arbitrator, not the circuit court. In so arguing, the defendants rely on this Court's decision in Anderton v. Practice-Monroeville, P.C., 164 So.3d 1094 (Ala. 2014).
"In Anderton, ... we recognized the general rules that apply in arbitration cases providing that ... nonsignatory issues of the type raised by [CCC] should be resolved by the trial court before the underlying dispute is sent to arbitration if, in fact, arbitration is ultimately determined to be the proper forum for the dispute. However, we also recognized that these general rules have their exceptions. ...
" '....'
"... The Anderton Court ... addressed the nonsignatory issue ..., stating:
" 'The question whether an arbitration provision may be used to compel arbitration of a dispute between a nonsignatory and a signatory is a question of substantive arbitrability (or, under the Supreme Court's terminology, simply "arbitrability"). In First Options [of Chicago, Inc. v. Kaplan], 514 U.S. [938,] 943-46, 115 S.Ct. 1920, 131 L.Ed.2d 985 [ (1995) ], the Supreme Court analyzed the question whether an arbitration agreement binds a nonsignatory as a question of arbitrability. See also Howsam [v. Dean Witter Reynolds], 537 U.S. [79,] 84, 123 S.Ct. 588, 154 L.Ed.2d 491 [ (2002) ] (noting that in First Options the Supreme Court held that the question "whether the arbitration contract bound parties who did not sign the agreement" is a question of arbitrability for a court to decide). More recently, the United States Court of Appeals for the Eighth Circuit succinctly addressed the threshold issue before us. In Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC, 756 F.3d 1098 (8th Cir. 2014), a nonsignatory sought to compel arbitration of a dispute with a signatory, as in this case. The court stated:
" ' "Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85, 123 S.Ct. 588, 154 L. Ed. 2d 491 (2002) (delineating potentially dispositive threshold issues between 'questions of arbitrability' and 'procedural questions'). We presume threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator. Id. at 83, 123 S.Ct. 588 ; Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc., 516 F.3d 695, 701 (8th Cir. 2008). We have previously held the incorporation of the AAA [ American Arbitration Association] Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability.... Eckert Wordell's drafting of the architectural services contract here to incorporate the AAA Rules requires the same result."
" ' 756 F.3d at 1100. See also Knowles v. Community Loans of America, Inc. (No. 12-0464-WS-B, Nov. 20, 2012) (S.D. Ala. 2012) (not reported in F. Supp. 2d) ("A question as to 'whether the arbitration contract bound parties who did not sign the agreement' is one that 'raises a "question of arbitrability" for a court to decide.' " (quoting Howsam, 537 U.S. at 84 )).
*577 " 'Like the Eighth Circuit, we have held "that an arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision." CitiFinancial Corp. v. Peoples, 973 So.2d 332, 340 (Ala. 2007). See also Joe Hudson Collision Ctr. v. Dymond, 40 So.3d 704, 710 (Ala. 2009) (concluding that an arbitrator decides issues of substantive arbitrability when the arbitration provision incorporated the same AAA rule as in the present case); and Wells Fargo Bank, N.A. v. Chapman, 90 So.3d 774, 783 (Ala. Civ. App. 2012) (same). The relevant AAA rule incorporated by the arbitration provision provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Thus, although the question whether an arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability usually decided by the court, here that question has been delegated to the arbitrator. The arbitrator, not the court, must decide that threshold issue.'
" 164 So.3d at 1101-02. Thus, the law in Alabama is such that a trial court considering a motion to compel arbitration should resolve ... nonsignatory issues unless the subject arbitration provision clearly and unmistakably indicates that those arguments should instead be submitted to the arbitrator."
Federal Ins. Co. v. Reedstrom, 197 So.3d 971, 974-76 (Ala. 2015).
The contract incorporates the AAA's Construction Industry Arbitration Rules, which state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." This is the same rule that was incorporated into the contract at issue in Anderton. Accordingly, we conclude, as we did in Anderton, that, "although the question whether an arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability usually decided by the court, here that question has been delegated to the arbitrator. The arbitrator, not the court, must decide that threshold issue." 164 So.3d at 1102.
Conclusion
The circuit court's order is reversed insofar as it denied the defendants' motion to compel arbitration and the cause remanded for the circuit court to enter an order granting the motion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Main, Wise, Bryan, and Sellers, JJ., concur.
Shaw, J., concurs in the result.
Parker and Murdock, JJ., concur in part and dissent in part.

This is the second contract between the parties. In the first contract, executed on August 19, 2014, CCC was to provide specified construction services to prepare a site location for the construction of the movie theater.

This Court defined "procedural arbitrability" in Brasfield as follows:
" '[P]rocedural arbitrability' ... involves questions that grow out of the dispute and bear on its final disposition, e.g., defenses such as notice, laches, estoppel, and other similar compliance defenses; such questions are for an arbitrator to decide. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 L. Ed. 2d 491 (2002) (' " 'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide" '); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L. Ed. 2d 898 (1964) (holding that an arbitrator should decide whether the steps of a grievance procedure were completed, where those steps were prerequisites to arbitration)."
35 So.3d at 604-05.